FILED

January 27, 2010

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0002377574

Eugene K. Yamamoto (State Bar No. 112245)
**LAW OFFICES OF EUGENE K. YAMAMOTO**
Lakeside Regency Plaza
1555 Lakeside Drive, Suite 64
Oakland, CA 94612
Telephone:   (510) 433-9340
Facsimile:    (510) 433-9342

Attorneys For The Debtor and
Debtor-In-Possession,
Lake Tahoe Development Co., LLC

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>**LAKE TAHOE DEVELOPMENT CO., LLC,**<br><br>          Debtor and Debtor in<br>          Possession | Case No.:  2009-41579<br>DC No.:  EKY-1<br><br>Chapter 11<br><br>Date:    February 2, 2010<br>Time:   9:32 a.m.<br>Ctrm:   33, Dept. B<br><br>The Honorable Thomas Holman |

## MOTION TO EXTEND EXCLUSIVITY PERIODS; AND MEMORANDUM OF POINTS

## AND AUTHORITIES IN SUPPORT

# TABLE OF CONTENTS

MOTION TO EXTEND EXCLUSIVITY PERIODS...............................................1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXTEND EXCLUSIVITY PERIODS...........................................................2

I.    PRELIMINARY STATEMENT.....................................................2

II.   FACTUAL BACKGROUND..........................................................3

    A.    General Description Of The Debtor......................................3

        1.  History of the Debtor.............................................4

        2.  Pre-Petition Events Leading to the Bankruptcy Filing.........4

    B.    Post-Petition Efforts To Develop The Property And A Plan Of Reorganization.............................................................6

        1.  Extension of TRPA Permits......................................7

        2.  Updating the Owner Participation Agreement..................8

        3.  Recording of Final Parcel Map..................................9

        4.  Resolving Issues with Caltrans...............................10

        5.  Addressing Utility Disputes...................................10

        6.  Potential Sale of the Project or New Capital Investment.......10

    C.    Request To Extend Exclusivity.........................................11

III.  LEGAL ANALYSIS................................................................12

    A.    The Exclusivity Periods.................................................12

    B.    The Court Has Authority To Extend The Debtor's Exclusivity Periods For Filing A Plan And Soliciting Acceptances Thereof.......................12

    C.    Good Cause Exists To Grant The Debtor's Request For Extensions Of The Plan Exclusivity Periods...............................................14

    D.    The Debtor's Request For An Extension Of The Exclusivity Periods Is In Good Faith, And Not For The Purposes Of Pressuring Creditors To Accede To The Debtor's Demands.............................................17

    E.    The Debtor Has Properly Administered Its Chapter 11 Case............17

IV.   CONCLUSION......................................................................18

# TABLE OF AUTHORITIES

## CASES

*In Re AMKO Plastics, Inc.*, 197 B.R. 74, 75-76 (S.D. Ohio 1996) .............................14,15

*In re Dow Corning Corp.,* 208 B.R. 661 (Bankr. E.D. Mich. 1997).................................16

*In re Express One Int'l*, 194 B.R. 98 (Bankr. E.D. Tex. 1996) .......................................16

*In re Henry Mayo Newhall Memorial Hospital*, 282 B.R. 444 (9th Cir. B.A.P. 2002)........................................................................................................................16

*In re McLean Industries*, 87 B.R. 830, 844 (Bankr. S.D.N.Y. 1987) ..........................14,15

*In re Perkins*, 71 B.R. 294, 297 (W.D. Tenn. 1987)........................................................15

*In re Pine Run Trust, Inc.*, 67 B.R. 432 (Bankr. E.D. Pa. 1986)................................17

*In re Trainer's, Inc.*, 17 B.R. 246 (Bankr. E.D. Pa. 1982) ...............................................17

*In re United Press International*, 60 B.R. 265 (Bankr. D.D.C. 1986)...........................17

*Matter of All Seasons Industries*, 121 B.R. 1002, 1005-1006 (Bankr. N.D. Ind. 1990)..................................................................................................................14,15

*NLRB v. Bildisco, et al.*, 465 U.S. 513, 527 (1984)..........................................................14

*United States v. Whiting Pools, Inc.*, 452 U.S. 198, 203 (1983) .....................................14

## STATUTES

11 U.S.C. § 1121(b) .................................................................................................2,11,12

11 U.S.C. §1121(c)...............................................................................................2, 11, 12

11 U.S.C. §1121(d) ..............................................................................2, 12,13

## OTHER AUTHORITIES

Congressional Record House Report ...........................................................................13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND ADEQUATE PROTECTION**

## MOTION TO EXTEND EXCLUSIVITY PERIODS

Lake Tahoe Development Co., LLC, a Nevada limited liability company, the debtor and debtor-in-possession in this Chapter 11 case ("Debtor"), hereby files this Motion ("Motion") for an Order extending the exclusive period within which the Debtor may file a plan of reorganization under Section 1121(b) and the exclusive period to solicit acceptances of a plan under Section 1121(c)(3) (collectively, "Exclusivity Periods"), for approximately 150 days to and including July 2, 2010, and September 2, 2010, respectively. This is the Debtor's first request to extend the exclusivity periods.

As set forth below, cause exists for this extension pursuant to Bankruptcy Code Section 1121(d) due to the complexity of the development and the ongoing efforts of the Debtor to propose a feasible reorganization plan, which include: (i) obtaining an extension of certain crucial development permits that expire in July of 2010; (ii) continuing on-going negotiations with a potential investor/joint venture partner concerning the Debtor's primary real property asset (the "Project"); (iii) continuing to work with the City of South Lake Tahoe to obtain the benefits of certain municipal bond financing; and (iv) negotiating with the creditors to attempt to forge a consensual plan of reorganization. The Motion is based on the memorandum of points and authorities attached hereto, the Declaration of Randy Lane filed concurrently herewith, the pleadings and proceedings in this case, and on the oral arguments and facts that may be presented to the Court at the hearing on the Motion

WHEREFORE, the Debtor requests an Order extending the Exclusivity Periods for approximately 150 days to and including July 2, 2010, and September 2, 2010, respectively, and for such other relief as is warranted under the circumstances.

DATED: January 27, 2010        LAW OFFICES OF EUGENE K. YAMAMOTO

By: _____
Eugene K. Yamamoto, Attorneys for the
Debtor and Debtor-In-Possession, Lake Tahoe
Development Co., LLC

MOTION TO EXTEND EXCLUSIVITY PERIODS; AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

Lake Tahoe Development Co., LLC, a Nevada limited liability company, is the debtor and debtor-in-possession in this Chapter 11 case ("Debtor"). The Debtor filed its voluntary Chapter 11 petition for relief on October 5, 2009 ("Petition Date"). At present, the exclusive period within which the Debtor may file a plan of reorganization under Section 1121(b) expires on February 2, 2010, and the exclusive period to solicit acceptances of a plan under Section 1121(c)(3) expires on April 2, 2010. The Debtor hereby moves for an order extending (1) the exclusive period within which the Debtor may file a plan of reorganization under Section 1121(b) for approximately 150 days to and including July 2, 2010, and (2) the exclusive period to solicit acceptances of a plan under Section 1121(c)(3) through and including September 2, 2010 (the "Motion"). This is the Debtor's first request to extend the exclusivity periods.

The Debtor's largest asset is a $250,000,000 large mixed use condominium, hotel, convention center, and retail space construction and development project, located at the California/Nevada state line on Highway 50, South Lake Tahoe, California (the "Project"). As shown below, cause exists for this extension pursuant to Bankruptcy Code Section 1121(d) due to the complexity of the development and the ongoing efforts of the Debtor to propose a feasible reorganization plan, which include: (i) obtaining an extension of certain development permits that expire in July of 2010; (ii) continuing on-going negotiations with a potential investor/joint venture partner concerning the Project; (iii) continuing to work with the City of South Lake Tahoe to obtain the benefits of certain municipal bond financing; and (iv) negotiating with the creditors to attempt to forge a consensual plan of reorganization.

Concurrently with this Motion, the Debtor is filing an application for Order Shortening Time for hearing on the Motion, given the expiration of the exclusivity period on February 2, 2010 and the potential investor/joint venture partner's concerns regarding

1  whether an order extending the exclusivity periods must be entered prior to its expiration.

2  In the event the Court declines to hear the Motion on shortened notice, the Debtor

3  requests that the Court enter a bridge order to extend exclusivity until the Motion can be

4  heard on regular notice.

## II.  FACTUAL BACKGROUND

### A.  General Description Of The Debtor

7  The Debtor commenced this voluntary Chapter 11 Case on October 5, 2009.  The

8  Debtor is a real estate development company with substantial expertise in the real estate

9  land entitlement and permitting areas in the unique geographic location of South Lake

10 Tahoe, California.  Its principal, Randy Lane ("Lane"), who is the sole owner of Mountain

11 Ventures, LLC, which is the managing member of the Debtor, has resided and

12 developed real estate in South Lake Tahoe since 1976, is well known in the South Lake

13 Tahoe Area and very well acquainted with the local government entities and officials in

14 South Lake Tahoe, including, without limitation, the Tahoe Regional Planning

15 Association ("TRPA").  Declaration Of Randy Lane In Support Of Motion To Extend

16 Exclusivity Periods ("Lane Dec."), ¶¶3,4.

17 The Debtor owns an interest in two separate real estate development projects.

18 The first project owned exclusively by the Debtor is a large, mixed use, condominium,

19 hotel and retail space development comprised of 29 separate real estate parcels with

20 multiple lien holders holding liens against various parcels located at the

21 California/Nevada state line on Highway 50, South Lake Tahoe, California (the "Project").

22 The second is property owned by the Debtor located at 1259 Emerald Bay Road, South

23 Lake Tahoe, CA (the "Gateway Project"), which is separate and apart from the Project,

24 and is being developed by Danny Freeman pursuant to a development agreement.

25 Lane Dec., ¶5.

MOTION TO EXTEND EXCLUSIVITY PERIODS; AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT

### 1.  History of the Debtor[1]

The Debtor was formed in 2005 with one of its major purposes to acquire and develop the Project.  After acquiring certain existing rights from Marriot Hotels pursuant to that certain Disposition and Development Agreement ("DDA") between Marriot Hotels and City, the Debtor began from various landowners the 29 parcels that now make up the Project.  These 29 parcels had an acquisition cost of approximately $70,000,000, of which there was debt financing of approximately $26,000,000.  During this land acquisition period, the Debtor's other main principal, John Serpa ("Serpa"), acquired an interest in the Debtor ultimately contributing to the Debtor cash for acquisition and construction costs, totaling in excess of $69 million.

By acquiring and assembling the 29 parcels of real property and obtaining all required entitlements to develop them as an integrated parcel (subject only to recording a final parcel map), the Debtor significantly increased the value of the Project.  This increased value, however, can only be sustained by retaining all of the 29 separate parcels, with entitlements, together, as part of the approved Project.  A more detailed history of the Debtor and the challenges related to the development of the Project are set forth in pages 1 through 9 of the Preliminary Chapter 11 Status Report ("Report") attached as Exhibit "A" to the Lane Dec.  Capitalized terms herein not otherwise defined are as defined in the Lane Dec.

### 2.  Pre-Petition Events Leading to the Bankruptcy Filing

By early 2009, after unsuccessful efforts to locate new capital, a joint venture or debt financing for the Project, the existing secured debt started to mature.  In January 2009, after discussions with creditors, the Debtor believed that the only source of capital for a debt restructure could come from the sale of the Mello-Roos bonds by the City of South Lake Tahoe, which could be sold and the proceeds utilized to reimburse the Debtor for amounts it had already spent to acquire a portion of the land, and for utility

---

[1] Evidence of this Section A 1 and A 2 are set forth in the Lane Dec., ¶11, and Exh. A thereto.

1   relocation. These bonds were expressly authorized pursuant to the Owner Participation

2   Agreement ("OPA") between the Debtor and the City of South Lake Tahoe. However,

3   before they could be sold, the City Council needed to approve the sale of the bonds.

4   The bond sale would have provided the Debtor with approximately $15,000,000. These

5   funds would have paid off one group of secured creditors, referred to as the "Z-Loan

6   Debt" of approximately $12,500,000. The Z-Loan Debt had originally been put together

7   by a mortgage manager and consists of a group of approximately 44 individuals, and

8   their pension plans and trusts, who are separate beneficiaries under a Deed of Trust

9   against some, but not all, of the parcels that comprise the Project and which secures

10  their loan. The balance of the bond financing would have been divided among the

11  remaining secured creditors, to provide the Debtor with an additional two (2) years from

12  July 15, 2009, to develop the Project. Although this proposal was acceptable to most of

13  the secured creditors, a group of the Z-Loan beneficiaries were unwilling to compromise

14  on their debt.

15      Based upon the City Council's action in March 2009, which gave tentative

16  approval to the Debtors debt restructure plan, the Debtor went forward with preparing all

17  documents necessary for the sale of Mello-Roos Bonds. The Debtor worked diligently

18  with the City to conclude this transaction which involved numerous outside consultants

19  and attorneys. In June 2009, the Debtor went to the City Council for its final approval of

20  all documents and the sale of the bonds. The City Council, however, did not approve

21  the sale of the bonds and, as a result, the Debtor's restructuring efforts collapsed. Most

22  of the Debtor's unsecured debt is comprised of professionals who were engaged to

23  prepare documents required for the sale of the bonds.

24      During the period from March to June of 2009, the secured creditors began

25  recording Notices of Default, and as a result, on October 5, 2009, the Debtor filed its

26  Chapter 11 bankruptcy petition.

27

28

**MOTION TO EXTEND EXCLUSIVITY PERIODS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

The value of the Project is based upon retaining the 29 separate parcels that are entitled as one integrated project. This Project includes consolidating the 29 separate parcels of land pursuant to the approved but not yet recorded "final map," a valid TRPA development permit (which includes the necessary development resources) and an agreement with the City of South Lake Tahoe to sell municipal bonds.

The Debtor has the potential ability to keep the TRPA permit and the City's bond agreement intact. However, to record the "final map" the Debtor needs the approval of all secured creditors. Based upon the complexity of the debt structure, which includes approximately 44 individual pension plans and trusts from the Z Loan Debt, and the lack of collective creditor representation, it is difficult, if not impossible, to obtain this unanimous consent required to maintain the value of the Project without the assistance of a reorganization plan.

**B.      Post-Petition Efforts To Develop The Project And A Plan Of Reorganization**

The Debtor's members, having invested $90,000,000 of their own equity funds in the Project, have a strong desire and commitment to make this Project succeed. As a result of the $25,000,000 in excavation and foundation work completed at the Project prior to the Debtor shutting down construction, the 29 parcels are *de facto* joined together through foundation work and support structures that were constructed over existing boundaries of the currently existing 29 parcels throughout the Project. Lane Dec., ¶ 6.

The Debtor intends to reorganize and preserve its investment in the Project. This case currently involves approximately 59 separate secured creditors, with divergent views and interests holding Deeds of Trust on various, not necessarily contiguous, parcels. The TRPA Construction Permits ("TRPA Permits) will expire in July of 2010, unless extended. Lane Dec., ¶ 7.

In ordinary economic times, this Project is challenging in its complexity. In the difficult economic climate we are currently experiencing, where banks and institutional

lenders are not making new construction loans on large projects, this project is even more challenging. Lane Dec., ¶ 8.

In April of 2009, the City of South Lake Tahoe engaged an MAI appraiser at Johnson & Perkins, who valued the Project in April of 2009, at $105,000,000. It must be emphasized that the value of this Project is based upon all 29 parcels being consolidated, as approved in the final parcel map, and all entitlements and permits remaining active. Developed as an integrated parcel and maintain all of the entitlements and permits in place to do so. Lane Dec., ¶ 9. The Debtor is uniquely positioned to preserve and enhance the value of the Project because of its unique knowledge, expertise, familiarity and local relationships with all development agencies within the Lake Tahoe Basin. In addition, the Debtor has invested substantial amounts in the Project and wants an opportunity to reorganize. Lane Dec., ¶ 10.

In attempting to formulate a Chapter 11 Plan here, the following critical issues must first be addressed. Lane Dec., ¶ 12.

**1.    Extension of TRPA Permits.**

The Tahoe Regional Planning Authority is a bi-state (California and Nevada) authority with the charter to preserve, restore, and enhance the unique natural and human environment of Lake Tahoe, which oversees and regulates development at Lake Tahoe. The TRPA Permits for the Project are scheduled to expire in July, 2010, unless extended. The Debtor spent two and a half years and $8,000,000 in its efforts to modify and renew the original permits which had been obtained prior to the Debtor's acquisition of the real property comprising the Project. The Debtor was able to use the existing Environmental Impact Report and Environmental Impact Statement previously approved, otherwise the time and expense would have been greater. The Debtor will seek to extend the TRPA Permits an additional three (3) years. The extension of the TRPA Permits is critical to the development of the Project. If the TRPA Permits expire, it would likely take three (3) to four (4) years, thousands of man hours and several million dollars

in costs to seek new TRPA Permits. Even so, obtaining new TRPA permits is a very uncertain undertaking. During the process, rules can be added or changed, adding to the difficulties and uncertainties. Environmental and construction experts must be retained to evaluate and prepare new environmental impact reports, public circulations and hearings regarding these documents and notices to all affected property owners would be required to obtain new TRPA Permits. Lane Dec., ¶ 12a.

The process to extend the TRPA Permits is costly and time consuming, but relatively minor in comparison to obtaining new permits. Along these lines, the Debtor is in the process of completing the TRPA applications to make minor modifications to the Project which will not impact previously obtained environmental or discretionary permits from any agency. The Debtor is working with the original architect, Randy Brown from the MBA firm in Reno, Nevada and their staff, and Michael Russell of PD&A in Southern California, the design consultant, to prepare the necessary collateral material to submit with the TRPA extension application. This process involves interior modifications to address current and projected market conditions and make the Project more attractive to potential investors/buyers. There are numerous steps involved in this process, and it will take the Debtor an estimated 4 or 5 months to complete. Extension of the TRPA Permits inures to the benefit of all creditors since it preserves the value of the Project. Lane Dec., ¶ 12a.

**2. Updating the Owner Participation Agreement.**

The Debtor is continuing to work with the City of South Lake Tahoe ("City") regarding updating and re-evaluating the Development Agreement with the City set forth in the Owner Participation Agreement ("OPA"). The OPA contains various negotiated concessions and benefits (including financial benefits and incentives) between the City and the Debtor; it also contains timelines which must be adjusted and renegotiated due to the present situation of the Project. The OPA remains in effect, however, it must be updated to reflect the current project status and market conditions. This necessitates a

In re Lake Tahoe Dev. No. 09-41579
**MOTION TO EXTEND EXCLUSIVITY PERIODS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

re-evaluation of various requirements which need to be addressed in order for the Project to maintain its value and receive the maximum financial benefits from the OPA, including, without limitation:

- Municipal Bond Sale Program (re-evaluating bond financing program which may provide additional financial benefits for the Project.)
- Convention Center size – (re-evaluate the cost, size and design of the center)
- Overhead pedestrian separation (re-evaluating the need, design and utility of the overhead walkway)
- Transfer of development resources from the City pool (confirming the Commercial Floor Area ("CFA") allocation to the Project)

Lane Dec., ¶ 12b.

### 3. Recording of Final Parcel Map.

The Debtor has expended significant efforts to obtain the City's approval of a final parcel map. The Project is currently being developed without recordation of the final map. The Debtor understands that all secured creditors must acknowledge the final map prior to its recordation. Notwithstanding that recordation of a final map is a critical part of the entitlement package, which allows the Project to be completed, facilitates a possible sale of the Project, some secured creditors have expressed resistance to a final map recordation based upon their beliefs that their security would be compromised. The Debtor has met with various secured creditors to attempt to build consensus with regard to recording a final map. Working with creditors is a key element in recording the final parcel map which is essential to the value of the entitled Project. Currently it appears that the only way to obtain the requisite creditor approval may be through a reorganization plan. When recorded this map will allow the following:

- Consolidation of the 29 parcels into 5 parcels.
- Transfer of all City streets within the development area to the Debtor.
- The future sale and transfer of three parcels of land to the City; (1) perimeter circulation parcel which includes sidewalks, and streetscape; (2) Open space parcel required by TRPA permit; (3) Air space parcel to allow City ownership of convention facility with 99 year leaseback to debtor. The value of these parcels on April 1, 2009, was estimated by Johnson & Perkins appraisers at $23,100,000, which

would be paid to the Debtor (developer) upon sale of the non-reimbursable Mello-Roos Bonds. Lane Dec., ¶ 12c.

### 4. Resolving Issues with Caltrans.

Issues with Caltrans that need to be addressed include: (i) certain encroachment permit issues along U.S. Highway 50; and (ii) the prolonged closure of pedestrian access along West side of U.S. Highway 50. Lane Dec., ¶ 12d.

### 5. Addressing Utility Disputes.

The Debtor has been working with the Utility Companies to resolve disputes over the costs associated with relocation of utilities included in South Tahoe Public Utility District (STPUD) and Lakeside Water Company, which could result in an offset of fees or reimbursement of a portion of the costs to the Debtor. Lane Dec., ¶ 12e.

### 6. Potential Sale of the Project or New Capital Investment.

One Plan alternative involves a potential sale of the Project as a means toward satisfying the Debtor's obligation to creditors. The Debtor has met with certain of the secured creditors in connection with pursuing the possible marketing of the Project by outside real estate brokers or intermediaries. Lane Dec., ¶ 12f. The difficulties in a sale of the Project involve not only the availability of qualified purchasers, but the amount of time and resources required to educate a perspective purchaser as to the complexities, unique entitlements and construction process (and limitations) associated with development in the South Lake Tahoe area. As a result of these difficulties, the Debtor has expended substantial amounts of time, energy and money in pursuing a sale or joint venture of the Project in the past several months. Lane Dec. ¶ 13.

In connection with the foregoing, the Debtor is currently involved in serious discussions with a potential investor. Lane Dec. ¶ 14. The investor has requested that the Debtor's principals keep the identity of the potential investor confidential, at least until the parties are able to formulate a binding agreement. Id. The Debtor is concerned that a breach this confidentiality will jeopardize the consummation of an agreement. Id.

1   Negotiating an agreement for the sale of the Project is quite involved and complex. Id.

2   Any investment in the Project requires a substantial amount of interaction so that the

3   investor understands the Project and the complex issues involved in the development

4   and construction of the Project. There have been several months of negotiations with

5   this potential investor and the investor has become familiar with the Project. Id. The

6   Debtor believes that this potential investor has the financial wherewithal and experience

7   to complete the Project in the event an agreement is reached. Id.

8   **D.      Request to Extend Exclusivity.**

9           At present, the exclusive period within which the Debtor may file a plan of

10  reorganization under Section 1121(b) expires on February 2, 2010, and the exclusive

11  period to solicit acceptances of a plan under Section 1121(c)(3) expires on April 2, 2010.

12  The Debtor hereby requests an extension of (1) the exclusive period within which the

13  Debtor may file a plan of reorganization under Section 1121(b) for approximately 150

14  days to and including July 2, 2010, and (2) the exclusive period to solicit acceptances of

15  a plan under Section 1121(c)(3) through and including September 2, 2010. As set forth

16  above, the Debtor has made substantial progress thus far in its Chapter 11 case, and

17  based thereon requests an extension of approximately 150 days of the exclusivity

18  periods in order to: (i) allow Debtor to obtain an extension of the TRPA Permits, (ii)

19  update the OPA, (iii) continue to work toward recordation of a final parcel map, (iv)

20  working with Caltrans to resolve encroachment issues and closure of pedestrian access,

21  and (v) continue working on the possible sale of the Property.

22          The Debtor requires more time to address the issues set forth above concerning

23  the Project, formulation of a plan and possible sale of the Project. It is likely that

24  resolution of these issues may require a longer period of time, however, it makes sense

25  to the Debtor at this juncture, to request a 5 month extension of the exclusivity periods

26  since, during this time, the Debtor should be able to obtain the extension of the TRPA

27  Permits and hopefully finalize an agreement with the potential investor. Lane Dec., ¶15.

28

**MOTION TO EXTEND EXCLUSIVITY PERIODS; AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT**

1  This relief is warranted under the circumstances, particularly given the Debtor's

2  substantial progress to date, and will enable the Debtor to formulate and confirm a plan

3  of reorganization under the protection of the exclusivity provisions of Section 1121.

### III. LEGAL ANALYSIS

### A. The Exclusivity Periods

The Order for relief was entered when the Debtor commenced this Bankruptcy

Case on October 5, 2009. The "Exclusivity Periods" which are the focus of this motion

are set forth in Bankruptcy Code Section 1121(b) and (c). Under Section 1121(b), only

the Debtor can file a reorganization plan during the first 120 days after the entry of the

Order for relief. Under Section 1121(c), the Debtor retains the exclusive right to file a

plan for 180 days after entry of the Order For Relief, provided that the Debtor filed a plan

within the 120 day period set forth in 1121(b), no trustee has been appointed and the

plan filed by the Debtor has been accepted within the 180 day period. 11 U.S.C.

§1121(b) and (c). The Exclusivity Periods currently expire on February 2, 2010 and

March 4, 2010, respectively.

### B. The Court Has Authority To Extend The Debtor's Exclusivity Periods For Filing A Plan And Soliciting Acceptances Thereof.

Bankruptcy Code Section 1121(d)(1) provides that this court may for "cause"

extend the 120 day and 180 day Exclusivity Periods "on request of a party in interest

made within the respective periods specified in subsections (b) and (c) of this section

[§1121] and after notice and a hearing." 11 U.S.C. §1121(d)(1).

The Debtor is a party in interest and requests an approximate 150 day extension

of the Exclusivity Periods of Bankruptcy Code Section 1121(b) and (c) in order that it can

continue its efforts with development of the Project in order to propose a feasible

Chapter 11 plan of reorganization, including, without limitation: (i) extending the TRPA

permits, which requires reworking of the Project design; (ii) obtain a re-evaluation of the

OPA with the City of South Lake Tahoe which is dependent upon extending the TRPA

and the ultimate plan for building out the Project; (iii) continuing its negotiations with the potential investor with regard to the purchase of or investment in the Project; (iv) commencing discussions with CalTrans and the Utility Companies; and then, (v) discussing project developments with the secured creditors in the hopes of obtaining creditor approval of the recordation of a final map.

Since "cause" for the extension of exclusivity periods is not defined, it is left to be developed by case law. When determining the existence of "cause" Courts should keep in mind the principal Congressional goal of Chapter 11 as articulated by the U.S. Supreme Court, "the successful rehabilitation of the debtor or its business." *NLRB v. Bildisco, et al.*, 465 U.S. 513, 527 (1984); *United States v. Whiting Pools, Inc.*, 452 U.S. 198, 203 (1983); *See also* House Report at 220. By providing the initial "Exclusivity Periods" and the authority to extend these periods to a maximum limit in Bankruptcy Code Section 1121(d), Congress left the length of the Exclusivity Periods largely within the discretion of the Bankruptcy Court. To achieve the primary goal of a successful rehabilitation of the debtor, the term "cause" is to be viewed flexibly in order to allow the debtor to reach an agreement." *In re McLean Industries*, 87 B.R. 830, 844 (Bankr. S.D.N.Y. 1987); *In re Perkins*, 71 B.R. 294, 297 (W.D. Tenn. 1987). In determining whether cause exists to extend the Exclusivity Periods, courts traditionally consider the factors regarding the size and complexity of the case. *Matter of All Seasons Industries*, 121 B.R. 1002, 1005-1006 (Bankr. N.D. Ind. 1990); *In Re AMKO Plastics, Inc.*, 197 B.R. 74, 75-76 (S.D. Ohio 1996).

Indeed it is the very goal of the Chapter 11 Process, rehabilitation to preserve and generate going concern value to increase the pool of assets available for distribution to creditors, which is at play here since the value of the Project, and the ultimate return to creditors, increases if this entire Project is kept intact through the reorganization process (i.e. if any of the assembled 29 parcels is removed, the building permits and the ability to record the final map are lost and the value of the Project then drops significantly).

A list of some of the factors that various courts, including the Ninth Circuit Bankruptcy Appellate Panel, have considered in determining whether there is "cause" to extend the Exclusivity Periods, include:

(1) The size and complexity of the case;

(2) The number of previous extensions;

(3) The amount of time which has elapsed in the case relative to its size and complexity;

(4) The existence of good faith progress;

(5) Whether the debtor is paying its bills as they become due;

(6) Whether the debtor has demonstrated reasonable prospects of filing a viable plan;

(7) Whether the debtor has made progress in negotiating with its creditors;

(8) Whether the debtor has deprived creditors of material or relevant information; and

(9) Whether the debtor is seeking an extension to pressure creditors.

*In re Dow Corning Corp.,* 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) and *In re Express One Int'l*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); See, *In re Henry Mayo Newhall Memorial Hospital*, 282 B.R. 444, 452 (9th Cir. B.A.P. 2002).

**C.     Good Cause Exists To Grant The Debtor's Request For Extensions Of The Plan Exclusivity Periods.**

In this case, good cause exists to grant the Motion.  Although the Debtor has made very significant progress thus far in its Chapter 11 case, the Debtor needs an additional period of time to continue to work towards development and/or sale of the Project.  Specifically, this case currently involves approximately 59 separate secured creditors, with divergent views and interests, holding Deeds of Trust on various, not necessarily contiguous, parcels, where the construction permits will expire in July of 2010, unless extended.  In ordinary economic times, such a Project is challenging in its

**MOTION TO EXTEND EXCLUSIVITY PERIODS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

1    complexity. In ordinary economic times, this Project is challenging in its complexity. In

2    the difficult economic climate we are currently experiencing, where banks and

3    institutional lenders are not making new construction loans on large projects, this project

4    is even more challenging.

5         The Debtor anticipates that it will ultimately file a plan of reorganization that will

6    allow the Debtor to record a final map, which will enhance the value of the Property and

7    make it more financeable and/or saleable. Before the Plan can be proposed, the Debtor

8    will need to obtain an extension of the building and TRPA permits. The current building

9    permits expire in July of 2010.  By pursuing a redesign of the hotel/condominium units,

10   as part of the process to obtain an extension of the TRPA permits, the Debtor will

11   address current market demands (which appear to call for smaller units than those

12   originally contemplated) and reducing the initial construction costs by constructing the

13   Project in phases. Through this redesign, the Debtor will likely be able to extend the

14   existing TRPA permits by three years which will inure to the benefit of all creditors.

15        In applying the factors courts in the Ninth Circuit review to determine requests to

16   extend exclusivity to the instant case, these factors weigh heavily in favor of extending

17   the exclusive periods.

18        First, there is no question that this is a large complicated case. The Debtor's

19   main asset, the Project, is a $250,000,000 development/construction project consisting

20   of 29 separate parcels of real property, with a recent appraisal value of $105,000,000.

21   There are 59 secured creditors, with an aggregate outstanding principal amount of more

22   than $50,000,000. The Debtor's equity holders have invested more than $90,000,000 in

23   the Project and more than $25,000,000 of excavation and foundation work has been

24   completed. Given the current status of construction, final build out of the Project will

25   require:  (i) TRPA Permit extensions, (ii) reworking the OPA with the City of South Lake

26   Tahoe, (iii) negotiations and resolution with CalTrans and the Utility Companies, and (iv)

27

28

**MOTION TO EXTEND EXCLUSIVITY PERIODS; AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT**

agreement of all of the secured creditors (either through consent or under a Plan) to record a final map.

Second, the Motion represents the Debtor's first and only request to extend the Exclusivity Periods.

Third, the amount of time that has elapsed relative to the size and complexity of this case is also met. Approximately 3 months have passed from the commencement of the Debtor's case.

Fourth, the existence of good faith progress is met. The Debtor is proceeding in good faith. The Debtor has met with its secured creditors for lengthy discussions both at the meeting of creditors and a separate meeting prior to the Preliminary Status Conference – as well as had other separate discussions with individual creditors. The Debtor has also met with architects and design consultants with regard to its goal of extending the TRPA Permits. Additionally, the Debtor has met with the City of South Lake Tahoe with regard to the OPA and various City issues. Finally, the Debtor has been in lengthy negotiations with a potential investor who has the wherewithal to complete the Project with the Debtor's assistance.

Fifth, the Debtor is paying its bills as they become due.

Sixth, although there are many steps and issues that must be addressed for the Debtor to be in position to propose its plan, the Debtor is heavily involved with negotiations with an investor who has the ability to complete the Project with the Debtor's assistance, and moreover has shown significant progress in efforts to develop the Project.

Seventh, as to whether the Debtor has made progress in negotiating with its creditors, the Debtor meeting with its creditors toward trying to reach a resolution. Although some of its secured creditors push for the immediate liquidation or sale of the Project, these creditors believe that since they hold first position liens they will get paid in

full, and the Debtor is also attempting to consensually address claims of the junior secured creditors and unsecured creditors.

Eighth, the Debtor has not deprived creditors of material or relevant information.

Ninth, the Debtor is not seeking an extension to pressure creditors, but rather to keep pursuing things such as an extension of the TRPA Permits and revision of the OPA that will inure to the benefit of the creditors.

In short, the Debtor meets the factors which the Courts have traditionally applied to determine cause for extending the Exclusivity Periods and the Debtor's motion should be granted.

**D.     The Debtor's Request For An Extension Of The Exclusivity Periods Is In Good Faith, And Not For The Purpose Of Pressuring Creditors To Accede To The Debtor's Demands.**

Courts have found cause to justify an extension of the debtor's exclusivity periods where there is no evidence that an extension is being sought for purposes of pressuring creditors into acceding to a debtor's reorganization demands. *See In re Pine Run Trust, Inc.*, 67 B.R. 432 (Bankr. E.D. Pa. 1986). The Debtor's request herein is being made in good faith and not for the purpose of pressuring creditors into acceding to certain plan terms. On the contrary, the Debtor intends to confirm a plan that provides for a distribution to creditors within a reasonable time period. The Debtor is not aware of any creditor whose claim would be adversely affected or impaired by the granting of the relief requested herein. The Debtor hopes to formulate a plan that will be supported by all creditors. Further, this is the Debtor's first request to extend exclusivity.

**E.     The Debtor Has Properly Administered its Chapter 11 Case.**

Courts have recognized that the diligence of management and proper administration of the case are yet additional factors supporting an extension of the exclusivity periods. *See, In re United Press International*, 60 B.R. 265 (Bankr. D.D.C. 1986); *In re Trainer's, Inc.*, 17 B.R. 246, 247 (Bankr. E.D. Pa. 1982).

MOTION TO EXTEND EXCLUSIVITY PERIODS; AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT

In the present case, the Debtor has properly administered its Chapter 11 case in that it has complied timely and properly with all of the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and is current with respect to all payments to, and all reporting requirements of, the Office of the United States Trustee. Under these circumstances, the Court may extend the exclusivity periods for filing and obtaining confirmation of a plan of reorganization with the confidence that the Debtor are in full compliance with the requirements that are a condition to the Debtor maintaining its exclusive rights to file plans and solicit acceptance thereof in its bankruptcy case.

## IV. CONCLUSION

Based on the foregoing, the Debtor respectfully requests that this Court enter an order granting the relief requested herein and such other and further relief as may be just and appropriate under the circumstances of the Debtor's case.

DATED: January 27, 2010   LAW OFFICES OF EUGENE K. YAMAMOTO

By: _____
Eugene K. Yamamoto, Attorneys for the
Debtor and Debtor-In-Possession, Lake Tahoe
Development Co., LLC